UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:
BYRON JESSUP
WANDA JESSUP
Debtors

Case No. 09-50922

J. JAMES ROGAN, TRUSTEE — PLAINTIFF

V. — Adv. No. 09-

CITIMORTGAGE, INC. — DEFENDANTS

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., ("MERS") solely
as nominee for Homeland Capital Mortgage

COMPLAINT TO DETERMINE VALIDITY, EXTENT AND PRIORITY OF LIENS AND FOR SALE OF REAL PROPERTY

The complaint of J. James Rogan, as Trustee for the bankruptcy estate of Byron Jessup and Wanda Jessup represents as follows:

JURISDICTION AND VENUE

1. On March 27, 2009, Byron Jessup and Wanda Jessup, filed a chapter 7 petition in the United States Bankruptcy Court, Eastern District of Kentucky, Lexington Division, and being styled Case No. 09-50922.

2. Plaintiff, J. James Rogan, was appointed as Trustee of the bankruptcy estate of Debtors Byron Jessup and Wanda Jessup, (hereinafter Debtors) on March 30, 2009, and is duly qualified and presently acting as trustee.

3. This court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334(b) and Section 157 in that this action arises in and relates to the Chapter 7

bankruptcy case of Byron Jessup and Wanda Jessup that is presently pending before the court. This proceeding is a core proceeding under 28 U.S.C. Section 157(b)(2)(A)(E)(K)(N) and (0).

4. That this proceeding is based upon 11 U.S.C. Sections 541, 544, 547, 362, 550 and 551 and Bankruptcy Rule 7001.

FACTUAL ALLEGATIONS

5. That on or about February 23, 2007 Debtors Byron Jessup and Wanda Jessup (hereinafter Debtors) granted a mortgage to Defendant Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Homeland Capital Mortgage (hereinafter MERS) to secure repayment of a note dated February 27, 2007, in the principal amount of $252,000.00 debtors executed by Homeland Capital Mortgage.

6. The February 23, 2007 mortgage secured Lender Homeland Capital Mortgage in repayment of the note debtors executed to it in the amount of $252,000.00. A copy of said note is attached hereto as Exhibit No. 1, and incorporated by reference.

7. Under the terms of the February 23, 2007 mortgage, Debtors mortgaged and conveyed to MERS with power of sale their residence, located at 2420 Parterre Place, Lexington, Kentucky and more particularly described as follows:

> Being all of Lot 4 of Parterre Place subdivision, Lexington, Fayette County, Kentucky, as shown by plat thereof of record in Plat Cabinet F, Slide 342, in the Fayette County Court Clerk's Office, said property being otherwise known as 2420 Parterre Place

8. That on February 23, 2007, a mortgage encumbering the above described real estate was filed in Mortgage Book 6016, Page 32, Fayette County Clerk's Office.

9. That Homeland Capital Mortgage indorsed the February 23, 2007 note in

blank.

10. That by assignment of mortgage executed by D.M. Wileman, Authorized Signator of MERS, filed of record on February 12, 2008 in Miscellaneous Book 457, Page 305, Fayette County Clerk's Office, MERS acting solely as nominee for Homeland Capital Mortgage, in which MERS assigned and set over, without recourse, to CitiMortgage, Inc. the February 23, 2007 mortgage together with certain note(s) described with all interest, all liens, any rights due or to become due thereon executed by Debtors. A copy of said assignment is attached hereto as Exhibit No. 2, and incorporated by reference.

11. That CitiMortgage, Inc. filed in Debtors' main case a motion to for relief from stay and for an order directing plaintiff to abandon the real estate described in paragraph no. 7. A copy of said motion is attached hereto as Exhibit No. 3 and is incorporated by reference.

COUNT I

12. That the averments in paragraphs 1 through 11 are incorporated by reference.

13 That on March 27, 2009, upon the filing of Debtors chapter 7 petition, plaintiff, as a trustee in bankruptcy pursuant to 11 U.S.C. §544(a)(1) obtained a judicial lien on the interest of Debtors in the real property described in paragraph no. 7 for the benefit of unsecured creditors of Debtors in the amount of $383,848.43.

14. That in its motion for relief from stay and for an order of abandonment (Exhibit No. 3), CitiMortgage, Inc. did not aver or represent that it was the holder of the note dated February 23, 2007, Debtors executed to Homeland Capital Mortgage, and such omission constitutes a judicial admission that CitiMortgage, Inc. is not the holder of said

note.

15. That based on information and belief, CitiMortgage, Inc. does not hold possession of the February 23, 2007 note Debtors executed in favor of Homeland Capital Mortgage and is not entitled to enforce payment of the note by sale of the real property described in paragraph no. 7.

16. That based on information and belief the February 23, 2007 note Debtors executed in favor of Homeland Capital Mortgage was neither assigned to MERS or in the possession of MERS rendering MERS incapable of either assigning the note or transferring possession of the note to CitiMortage, Inc.

17. That the interest of plaintiff in the real property described in paragraph no. 7, as a judicial lien creditor is superior to the interest of Defendants CitiMortgage, Inc. and MERS.

**WHEREFORE** Plaintiff-Trustee J. James Rogan prays for the following relief:

A. For the Court to enter a declaratory judgment that CitiMortgage, Inc. cannot enforce payment of the February 23, 2007 note; that MERS could not transfer possession of the February 23, 2009 note or assign the note to CitiMortgage, Inc., and the interest of plaintiff as a judicial lien creditor has priority over the interest of Defendants, MERS and CitiMortgage, Inc. in the real property described in paragraph no. 7.

B. For the Court to enter judgment authorizing plaintiff to sell the real property described in paragraph no. 7 free of all interests.

C. That each Defendant is required to plead what interest each may have in the real property or be forever barred.

D. For costs herein expended.

E. For all relief to which plaintiff may appear entitled.

J. James Rogan
J. James Rogan, P.S.C.
Attorney for Trustee
345 South Fourth Street
Danville, Kentucky 40422
(859) 236-8121 PHONE
(859) 236-8123 FACSIMILE

PLAINTIFF'S EXHIBIT NO. 1

FEBRUARY 23, 2007 NOTE

MIN: 1003043-0000065246-6 Loan Number: [redacted]

# ADJUSTABLE RATE BALLOON NOTE
# 30-YEAR TERM/40-YEAR AMORTIZATION
**(Assumable during Life of Loan)**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

FEBRUARY 23, 2007 [Date] CARMEL [City] INDIANA [State]

2420 PARTERRE PLACE, LEXINGTON, KENTUCKY 40504
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 252,000.00 (this is called "Principal"), plus interest, to the order of the Lender. The Lender is HOMELAND CAPITAL MORTGAGE , AN INDIANA CORPORATION . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.750 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on APRIL 1 , 2007 . I will make these payments every month until I have paid all of the Principal and interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

DocMagic eForms 800-649-1362
www.docmagic.com

B-1-5.

WFA

I will make my monthly payments at 600 E CARMEL DR, STE 110, CARMEL, INDIANA 46032 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,705.08 . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the 1st day of MARCH, 2010 , and may change on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 750/1000 percentage point(s) ( 5.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on MARCH 1, 2047 (which is called the "Amortization Date") in substantially equal installments at my new interest rate. The result of this calculation will be the new amount of my monthly payment.

**Notwithstanding the 40-year amortization period used to calculate my monthly payments, I understand that I must pay all amounts that I owe under this Note in full on or before the Maturity Date, which is approximately 30 years from the date of this Note.**

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.750 % or less than 7.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months.

My interest rate will never be greater than 13.750 %. My interest rate will never be less than 7.750 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

B L J.
W.F.d-

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

B.L.J.
WFA

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

B.L.J.
WEA.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

BYRON LEE JESSUP (Seal) -Borrower

WANDA F. JESSUP (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

PAY TO THE ORDER OF:
WITHOUT RECOURSE

HOMELAND CAPITAL MORTGAGE , AN INDIANA CORPORATION

BY:

ITS:

J. SCOTT ANSPACH, DIRECTOR OF LENDING
Homeland Capital Mortgage
600 East Carmel Drive, Suite 110
Carmel, Indiana 46032

*[Sign Original Only]*

PLAINTIFF'S EXHIBIT NO. 2

ASSIGNMENT

Return To:

Vickie Guilford
Manley Deas Kochalski PLLC
4665 Cornell Road, Suite 331
Cincinnati, OH 45241

## Assignment of Mortgage

Send Any Notices to Assignee.

For Valuable Consideration, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR HOMELAND CAPITAL MORTGAGE G4318 Miller Road, Flint, MI 48507 (Assignor)** by these presents does assign and set over, without recourse, to **CITIMORTGAGE, INC. 1111 Northpoint Drive, Building 4, Suite 100, Coppell, TX 75019 (Assignee)** the described mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by **BYRON LEE JESSUP AND WANDA F. JESSUP, HUSBAND AND WIFE** to HOMELAND CAPITAL MORTGAGE. Said mortgage Dated: 2/23/2007 is recorded in the **State of KY, County of Fayette on 3/15/2007, Book 6016 Page 32 AMOUNT: $ 252,000.00** Property Address: 2420 PARTERRE PLACE, LEXINGTON, KUY 40504

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: January 28, 2008

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR HOMELAND CAPITAL MORTGAGE

By: ______________________

D. M. Wileman, Authorized Signator

JESSUP YMG *02131308*

State of Texas County of Tarrant

On 1/28/2008, before me, the undersigned, D. M. Wileman, who acknowledged that he/she is Authorized Signator for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") *SOLELY AS NOMINEE FOR HOMELAND* CAPITAL MORTGAGE and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR HOMELAND CAPITAL MORTGAGE.

JULIE BACON
Notary Public, State of Texas
My Commission Expires
November 30, 2010

Notary public, Julie Bacon
My commission expires: November 30, 2010

Prepared by:

Laura L. Drake (KBA 88288)
Manley Deas Kochalski PLLC
4665 Cornell Road, Suite 331
Cincinnati, OH 45241

MERS Phone 888-679-6377
LAURA KELLER
CITIFIP/MANDEAS/CITI

EXHIBIT A

The following described property located in Fayette County, Kentucky, to-wit:

Being all of Lot 4 of Parterre Place Subdivision, Lexington, Fayette County, Kentucky, as shown by plat thereof of record in Plat Cabinet F, Slide 342, in the Fayette County Court Clerk's Office, said property being otherwise known as 2420 Parterre Place.

Subject to any restrictions and easements of record in the aforesaid Clerk's Office affecting the subject property.

Being the same property conveyed to Byron Lee Jessup and Wanda F. Jessup, husband and wife, by virtue of a deed from Parterre, Inc., dated July 8, 1986, filed July 9, 1986, recorded in Deed Book 1409, Page 15, County Clerk's Office, Fayette County, Kentucky.

Parcel Number: 20037540

Address: 2420 Parterre Place, Lexington, Kentucky 40504

I, Donald W Blevins, County Court Clerk of Fayette County, Kentucky, hereby certify that the foregoing instrument has been duly recorded in my office.

Donald W Blevins

By: HALLIE WOOSLEY , dc

200802120237

February 12, 2008 9:15:01 AM

Fees $13.00 Tax $.00

Total Paid $13.00

THIS IS THE LAST PAGE OF THE DOCUMENT

3 Pages

303 - 305

PLAINTIFF'S EXHIBIT NO. 3

MOTION FOR RELIEF FROM STAY AND FOR ABANDONMENT

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| **In re:** | : | |
| | : | |
| **Byron Jessup aka Byron Lee Jessup Wanda Jessup aka Wanda F. Jessup** | : | **Case No.: 09-50922** |
| | : | **Chapter 7** |
| | : | **Judge William S. Howard** |
| | : | * * * * * * * * * * * * * * * * * * * * * * |
| **Debtor.** | : | |

**MOTION FOR RELIEF FROM STAY AND ABANDONMENT OF REAL ESTATE LOCATED AT 2420 PARTERRE PLACE, LEXINGTON, KY 40504**

Comes now CitiMortgage, Inc., its successor and assigns, (hereinafter "Movant"), a creditor in the above-referenced case by counsel, and moves the court pursuant to 11 U.S.C. § 362(d) for an order granting relief from the automatic stay and pursuant to 11 U.S.C. § 554(b) for an order directing the Trustee to abandon the real estate of the Debtor in order that Movant may enforce its lien against the real estate of the Debtor located at 2420 Parterre Place, Lexington, KY 40504.

In support of its motion, Movant offers the attached memorandum.

Respectfully submitted,

/s/ Crystal L. Ford

Crystal L. Ford (KBA #89629)
Manley Deas Kochalski PLLC
P.O. Box 42728
Cincinnati, OH 45242-0728
614-220-5611; Fax: 614-220-5613
clf@mdk-llc.com; kybnkr@mdk-llc.com
Attorney for Creditor

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR RELIEF FROM STAY**

1. The Debtor filed a petition for relief under Chapter 7 on March 27, 2009.

2. The trustee of the estate of the Debtor in this case is J. James Rogan.

3. Movant has a secured claim in this case in the principal amount of $250,473.21 plus 7.75% interest per annum. The claim is secured by a security interest in the following collateral: real property located at 2420 Parterre Place, Lexington, KY 40504 and more fully described in the mortgage.

4. The security interest was perfected by the filing of the mortgage.

5. The Mortgage was transferred as follows:

   a. from Mortgage Electronic Registration Systems, Inc. ("MERS") solely as nominee for Homeland Capital Mortgage to CitiMortgage, Inc., dated January 28, 2008. The transfer is evidenced by the document attached to this Motion as Exhibit A.

6. A copy of the Proof of Claim filed in this case by Movant, along with copies of the note, security agreement, financing statement and supporting documents establishing the Movant's perfected security interest in the above-described property, is attached hereto.

7. The monthly payments due for January 1, 2009 through June 1, 2009 remain unpaid. The unpaid principal balance of $250,473.21 plus interest and fees equals a total of $260,385.70.

8. Movant seeks relief from stay on the following grounds: the interest of the Movant is not adequately protected; or the Debtor has no equity in the property and the property is not necessary to an effective reorganization, and Debtor intends to surrender the property located at 2420 Parterre Place, Lexington, KY 40504 according to the Chapter 7 Statement of Intention.

WHEREFORE, Movant respectfully requests that this Court enter an Order terminating the automatic stay to permit Movant to foreclose on its mortgage lien herein described and for such other relief as may be just.

Respectfully submitted,

/s/ Crystal L. Ford
Crystal L. Ford (KBA #89629)
Manley Deas Kochalski PLLC
P.O. Box 42728
Cincinnati, OH 45242-0728
614-220-5611; Fax: 614-220-5613
clf@mdk-llc.com; kybnkr@mdk-llc.com
Attorney for Creditor

**NOTICE**

Please take notice that parties in interest shall have 15 days from the date of this motion within which to file a response to the motion and a request and notice of hearing on such response. If no response is timely filed, the enclosed order may be entered by the court without a hearing on the motion.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Motion for Relief from Stay and Abandonment was served on the parties listed below via e-mail notification:

Office of U.S. Trustee
Eastern District of Kentucky
Party of Interest
100 East Vine Street, 8th Floor
Lexington, KY 40507

J. James Rogan
345 South 4th Street
Danville, KY 40422-2054
jrattorney@bellsouth.net

John M. Simms
Attorney for Byron Jessup aka Byron Lee Jessup and Wanda Jessup aka Wanda F. Jessup
1608 Harrodsburg Road
Lexington, KY 40504
jms@ask-law.com

The below listed parties were served via regular U.S. Mail, postage prepaid on June 26, 2009:

Byron Jessup aka Byron Lee Jessup
Wanda Jessup aka Wanda F. Jessup
345 Bob O Linkv Dr
Lexington, KY  40503

Byron Jessup aka Byron Lee Jessup
Wanda Jessup aka Wanda F. Jessup
2420 Parterre Place
Lexington, KY  40504

 /s/ Crystal L. Ford
Crystal L. Ford