**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

In Re: Case No. 09-50922

Byron Jessup
Wanda Jessup

Chapter 7

Judge William S. Howard

Debtors

J. James Rogan, Trustee PLAINTIFF

v.

**ADV. NO. 09-5229**

CitiMortgage, Inc.

Mortgage Electronic Registration Systems, Inc. (MERS), *solely as nominee for Homeland Capital Mortgage* DEFENDANTS

**SUPPLEMENTAL AFFIDAVIT OF CITIMORTGAGE, INC.**

**STATE OF TEXAS** )
) **SS**
**COUNTY OF** Dallas )

Affiant, Angela Pollard, being first duly sworn, states as follows:

1. I am Angela Pollard Bankruptcy Adversary Manager of Defendant CitiMortgage, Inc. ["CitiMortgage"]. I have authority to attest on behalf of CitiMortgage. I have custody of the mortgage loan records of Debtors Byron Lee Jessup and Wanda F. Jessup ["Debtors"] including the loan origination file and loan servicing records

EXHIBIT I

pertaining to the mortgage loan that is the subject of this action. I am familiar with mortgage loan and the preparation and maintenance of the mortgage loan records that are kept in the regular course of business.

2. CitiMortgage provided the primary funding for Debtors' mortgage loan that was originated by Homeland Capital Mortgage on February 23, 2007 in the principal amount of $252,000. Attached as Exhibit A is a true and authentic copy of the loan servicing record showing that the loan was funded by CitiMortgage on March 26, 2007 in the principal amount of $251,922. Attached as Exhibit B is a true and authentic copy of the first portion of the loan payment history showing CitiMortgage's receipt on June 11, 2007 of the second payment due on the loan on May 1, 2007.

3. Attached hereto as Exhibit C is a true and authentic copy of the Note. At loan origination, Homeland Capital Mortgage executed the blank endorsement on the Note.

4. The loan closing agent was Pioneer Title as shown by the HUD 1 Settlement Statement, a true and authentic copy of which is attached as Exhibit D. When the Debtors executed the Note and Mortgage, the original documents were held by Pioneer Title as custodian for Homeland Capital Mortgage and CitiMortgage as transferee and primary funder of the loan.

5. On or about March 15, 2007, the mortgage recording date, the original Note with blank endorsement and recorded Mortgage were transferred by Homeland to the direct custody of CitiMortgage. A true and authentic copy of the Final Documentation Transmittal is attached as Exhibit E.

6. CitiMortgage has held a beneficial interest in the mortgage loan since the date of funding on March 26, 2007.

7. CitiMortgage accepted legal title to the Mortgage from Mortgage Electronic Registration Systems, Inc. CitiMortgage intended to be bound by and perform on the Assignment of Mortgage executed on January 28, 2008 and recorded on February 12, 2008 with the Fayette County, KY Clerk as instrument # 200802120237. CitiMortgage accepted legal title for recordation purposes.

Further Affiant Sayeth Naught.

Angela Pollard

Sworn to and subscribed in my presence this 1 day of ~~February~~ March 2010.

NOTARY PUBLIC

KEENAN C CULPEPPER
My Commission Expires
January 27, 2014

Page: 1 Document Name: untitled

AUXILIARY FILE DATA ENTRY A251 03/01/10 PFMM902

| | | | | | |
|---|---|---|---|---|---|
| ACCOUNT | [redacted]9128 PAGE 1 | NAMEKEY | JESSUP B 420 | LTV | 89.455 |
| MONTHLY PYMT | 2071.67 | APPL DT | 03/26/07 | CMT EXP DT | 00/00/00 |
| MONTHLY INC | 9227 | REFI EQTY | 6 | ORIG LTV | 90.000 |
| CMT EXT DATE | 00/00/00 | PRICING DT | 00/00/00 | FRONT RATIO | 22.45 |
| REPRICING DT | 00/00/00 | SALE COMP | 000 | BACK RATIO | 39.80 |
| MONTHLY OBLG | 3672 | ALT SOURCE | 0 | RATE LCK DT | 00/00/00 |
| PROC BRANCH | 455 | REG DATE | 00/00/00 | 3RD PARTY ORIG: | |
| FUNDING DATE | 03/26/07 | FUNDED AMT | 251922.00 | | |
| UNEA SF | .00 | EXCESS SF | .00 | 3RD PARTY IND. | N |
| UNEA EXC SF | .00 | SSB ACCT | | HIGH VALUE | |
| ADJ RATE CAP | 1.00000 | MAX INT RT | 13.75000 | RATE OPTION | 0 |
| ADJ DATE | 03/01/10 | MARGIN | 5.75000 | CMT CLOSE | 0 |
| BD INT RATE | .00000 | ORIG BD BAL | .00 | SET RATE DT | 00/00/00 |
| FWRD CMT ID | 0 | FWRD CMT NO | 0 | FINL SET DT | 00/00/00 |
| REF ACCT | 0000000000[redacted] | REF COMPANY | 001 | AGENT NAME | 0 |
| REPLACE COST | 290445 | LAND VALUE | 50000 | FXD/ARM IND | E |
| ISN | 33394 | ISL | 70306 | SOURCE TYPE | 306 |
| PROGRAM TYPE | 160 | SUB PGM TYP | 0 | SERV ACT DT | 04/11/07 |
| ORIG MGR ID | 0 | LOAN OFFICR | | SUB PGM 2 | 0 |
| SRPA | | DEL OPT | 3 | RATE CMT DT | 00/00/00 |
| SYS CMT DT | 00/00/00 | SYS CLOS DT | 04/11/07 | ACQ SERV DT | 00/00/00 |

*NO*

Date: 03/01/2010 Time: 10:15:06 AM

Page: 1 Document Name: untitled

```
DLSO0142    DLSM142       CONSOLIDATED NOTE SCREEN              03/01/10    10:40

LOAN #: [redacted]9128  9  CUSTOMER: BYRON JESSUP                      TYP: 001
DEPT ID: ALL (ALL/SEL/ACRONYM)  BAL: N  TYPE: F (F=FINANCIAL,D=DATAMSGS,B=BOTH)
START DATE: 03/01/10   STOP DATE: 00/00/00   PRINT: N (Y/N)   PRINTER:
INV: 00100/00000              BLK: 042/000             UNAP:        34.43  CD:  C
PDTO: 12/01/08 PBAL:      250473.21 EBAL:        -4391.26 WARN: 0 LOCK: 9 STOP: 00
I-YTD:          0.00                                  TIED:
 DATE  TRAN PDTO    TRAN AMT          PRIN        INT          ESC      L/C   OT-AMT
020810 FEI  1201        -13.50  46-BIE-BATCH INSP EXP      INBK-INSPECTION-BANKRU
011110 FEI  1201        -13.50  46-BIE-BATCH INSP EXP      INBK-INSPECTION-BANKRU
123109 YTD  1201           .00             .00  1663.12    3349.70       .00      .00
121009 FEI  1201         -8.00  46-BIE-BATCH INSP EXP      INBK-INSPECTION-BANKRU
111309 FEI  1201         -8.00  46-BIE-BATCH INSP EXP      INBK-INSPECTION-BANKRU
101209 FEI  1201         -8.00  46-BIE-BATCH INSP EXP      INBK-INSPECTION-BANKRU
100709 E90  1201      -1663.46 PAYEE = FAYETTE CO       -1663.46  CHK# 00121655536
092209 FEI  1201         -8.00  46-BIE-BATCH INSP EXP      INBK-INSPECTION-BANKRU
070709 FEI  1201         -8.00  46-BIE-BATCH INSP EXP      INBK-INSPECTION-BANKRU
063009 DEB              550.00 410040817 MANLEY DEA 4102601      090630
                13-BANKRUPTCY ATTY FEE      BMFR-MOTION FOR RELIEF

                    PF1-DETAIL     PF3-RETURN     PF4-ADD NOTE      PF5-CHG PRTY
PF6-TELLER INFO  PF7-PAGE BCK  PF8-PAGE FWD  PF9-QUICK CODES  PF10-CONTACT HIST
DISPLAY COMPLETE                                            NEXT ACTION:
```

EXHIBIT B

Date: 03/01/2010 Time: 10:40:26 AM

Page: 1 Document Name: untitled

DLSO0142 DLSM142 CONSOLIDATED NOTE SCREEN 03/01/10 10:40

LOAN #: [redacted]9128 9 CUSTOMER: BYRON JESSUP TYP: 001
DEPT ID: ALL (ALL/SEL/ACRONYM) BAL: N TYPE: F (F=FINANCIAL,D=DATAMSGS,B=BOTH)
START DATE: 03/01/10 STOP DATE: 00/00/00 PRINT: N (Y/N) PRINTER:
INV: 00100/00000 BLK: 042/000 UNAP: 34.43 CD: C
PDTO: 12/01/08 PBAL: 250473.21 EBAL: -4391.26 WARN: 0 LOCK: 9 STOP: 00
I-YTD: 0.00 TIED:

| DATE | TRAN | PDTO | TRAN AMT | PRIN | INT | ESC | L/C | OT-AMT |
|---|---|---|---|---|---|---|---|---|
| 071307 | UI | | | .00 | .00 | .00 | 85.25 | .00 |
| 071307 | RP | 0701 | 1705.08 | 79.09 | 1625.99 | .00 | .00 | .00 |
| 071307 | RP | 0601 | 1705.08 | 78.59 | 1626.49 | .00 | .00 | .00 |
| 071307 | UI | | | .00 | .00 | .00 | -85.25 | .00 |
| → 061107 | RP | 0501 | 1705.08 | 78.08 | 1627.00 | .00 | .00 | .00 |
| 052307 | AA4 | 0401 | ESC-FROM | 366.59 TO | | .00 | | |

PF1-DETAIL PF3-RETURN PF4-ADD NOTE PF5-CHG PRTY
PF6-TELLER INFO PF7-PAGE BCK PF8-PAGE FWD PF9-QUICK CODES PF10-CONTACT HIST
END OF DATA NEXT ACTION:

Date: 03/01/2010 Time: 10:40:38 AM

MIN: 1003043-0000065246-6 Loan Number: [redacted]

# ADJUSTABLE RATE BALLOON NOTE
# 30-YEAR TERM/40-YEAR AMORTIZATION
(Assumable during Life of Loan)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| FEBRUARY 23, 2007 | CARMEL | INDIANA |
|---|---|---|
| [Date] | [City] | [State] |

2420 PARTERRE PLACE, LEXINGTON, KENTUCKY 40504
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 252,000.00 (this is called "Principal"), plus interest, to the order of the Lender. The Lender is HOMELAND CAPITAL MORTGAGE , AN INDIANA CORPORATION . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.750 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on APRIL 1 , 2007 . I will make these payments every month until I have paid all of the Principal and interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

B.J.

WFA

EXHIBIT C

I will make my monthly payments at 600 E CARMEL DR, STE 110, CARMEL, INDIANA 46032 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,705.08 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of MARCH, 2010 , and may change on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 750/1000 percentage point(s) ( 5.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on MARCH 1, 2047 (which is called the "Amortization Date") in substantially equal installments at my new interest rate. The result of this calculation will be the new amount of my monthly payment.

Notwithstanding the 40-year amortization period used to calculate my monthly payments, I understand that I must pay all amounts that I owe under this Note in full on or before the Maturity Date, which is approximately 30 years from the date of this Note.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.750 % or less than 7.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months.

My interest rate will never be greater than 13.750 %. My interest rate will never be less than 7.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

BLJ.
W.F.d.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

BYRON LEE JESSUP (Seal) -Borrower

WANDA F. JESSUP (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

PAY TO THE ORDER OF:
WITHOUT RECOURSE
HOMELAND CAPITAL MORTGAGE , AN INDIANA CORPORATION
BY:
ITS:

J. SCOTT ANSPACH, DIRECTOR OF LENDING
Homeland Capital Mortgage
600 East Carmel Drive, Suite 110
Carmel, Indiana 46032

*[Sign Original Only]*

# PREPAYMENT PENALTY NOTE ADDENDUM

Loan Number: [redacted]

Date: FEBRUARY 23, 2007

Borrower(s): BYRON LEE JESSUP, WANDA F. JESSUP

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 23rd day of FEBRUARY, 2007, and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of HOMELAND CAPITAL MORTGAGE, AN INDIANA CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 5 of the Note is amended to read in its entirety as follows:

**5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to:

B.L.J.
W.F.J.

If paid during the first year from the date hereof, FIVE percent ( 5.000 %) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the second year from the date hereof, FIVE percent ( 5.000 %) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the third year from the date hereof, FIVE percent ( 5.000 %) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the fourth year from the date hereof, N/A percent ( N/A %) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the fifth year from the date hereof, N/A percent ( N/A %) of the portion of such prepayment equal to the principal amount so prepaid.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

Byron Lee Jessup 2/23/07 — Borrower BYRON LEE JESSUP — Date
Wanda F. Jessup 2/23/07 — Borrower WANDA F. JESSUP — Date

Borrower — Date
Borrower — Date

Borrower — Date
Borrower — Date

OMB NO. 2502-0265

A. U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT

SETTLEMENT STATEMENT

B. TYPE OF LOAN: 1. [ ] FHA 2. [ ] FmHA 3. [X] CONV. UNINS. 4. [ ] VA 5. [ ] CONV. INS.

6. FILE NUMBER: 2700344

7. LOAN NUMBER: [redacted]

8. MORTGAGE INS CASE NUMBER: MIC

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

D. NAME AND ADDRESS OF BORROWER:
Byron Lee Jessup
Wanda F. Jessup
2420 Parterre Place
Lexington, Kentucky 40504

E. NAME AND ADDRESS OF SELLER:

F. NAME AND ADDRESS OF LENDER:
Homeland Capital Mortgage
600 East Carmel Drive, Suite 110
Carmel, Indiana 46032

G. PROPERTY LOCATION:
2420 Parterre Place
Lexington, KY 40504
Fayette County, Kentucky
Lot 4 Parterre Place
in the City of Lexington
Fayette County, Kentucky

H. SETTLEMENT AGENT: 83-0371008
Pioneer Title, LLC

PLACE OF SETTLEMENT
220 W. Washington St., Ste A
Lebanon, IN 46052

I. SETTLEMENT DATE:
February 23, 2007
Disburse: 02/28/07

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 16,281.33 | 403. | |
| 104. Mortgage Payoff to Wells Fargo Home Mortgage## 567 | 76,457.17 | 404. | |
| 105. Mortgage Payoff to Central Bank## 4388358800055285 | 159,344.20 | 405. | |
| *Adjustments For Items Paid By Seller In advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes to | | 406. City/Town Taxes to | |
| 107. County Taxes to | | 407. County Taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| *120. GROSS AMOUNT DUE FROM BORROWER* | 252,082.70 | *420. GROSS AMOUNT DUE TO SELLER* | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 252,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes to | | 510. City/Town Taxes to | |
| 211. County Taxes to | | 511. County Taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| *220. TOTAL PAID BY/FOR BORROWER* | 252,000.00 | *520. TOTAL REDUCTION AMOUNT DUE SELLER* | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 252,082.70 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 252,000.00) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| *303. CASH ( X FROM ) ( TO ) BORROWER* | 82.70 | *603. CASH ( TO ) ( FROM ) SELLER* | 0.00 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

Borrower [signature] Byron Lee Jessup

[signature] Wanda F. Jessup

Seller

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.

[signature]
Pioneer Title, LLC
Settlement Agent

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18 U.S. CODE SECTION 1001 & SECTION 1010.

EXHIBIT D

Page 2

## L. SETTLEMENT CHARGES

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL COMMISSION Based on Price $ @ % | | |
| Division of Commission (line 700) as Follows: | | |
| 701. $ to | | |
| 702. $ to | | |
| 703. Commission Paid at Settlement | | |
| 704. to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee % to | | |
| 802. Loan Discount % to | | |
| 803. Appraisal Fee to Roppel Appraisal Services POC $300.00 | | |
| 804. Credit Report to | | |
| 805. Lender's Inspection Fee to | | |
| 806. Mortgage Ins. App. Fee to | | |
| 807. Assumption Fee to | | |
| 808. Underwriting Fee to Homeland Capital Mortgage | 999.00 | |
| 809. Mortgage Broker Fee to Sagamore Home Mortgage | 1,900.00 | |
| 810. Administrative Fee to Sagamore Home Mortgage | 350.00 | |
| 811. Yield Spread Premium to Sagamore Home Mortgage POCL $2,520.00 | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest From 02/28/07 to 03/01/07 @ $ 54.250000/day ( 1 days %) | 54.25 | |
| 902. Mortgage Insurance Premium for months to | | |
| 903. Hazard Insurance Premium for 0.0 years to Greater Lexington Insurance Agency | 337.83 | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard Insurance months @ $ per month | | |
| 1002. Mortgage Insurance months @ $ per month | | |
| 1003. City/Town Taxes months @ $ per month | | |
| 1004. County Taxes months @ $ per month | | |
| 1005. Assessments months @ $ per month | | |
| 1006. months @ $ per month | | |
| 1007. months @ $ per month | | |
| 1008. months @ $ per month | | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or Closing Fee to Pioneer Title, LLC | 125.00 | |
| 1102. Abstract or Title Search to | | |
| 1103. Title Examination to | | |
| 1104. Title Insurance Binder to | | |
| 1105. Document Preparation to | | |
| 1106. Notary Fees to | | |
| 1107. Attorney's Fees to | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance to Pioneer Title, LLC | 805.00 | |
| (includes above item numbers: ) | | |
| 1109. Lender's Coverage $ 252,000.00 | | |
| 1110. Owner's Coverage $ | | |
| 1111. | | |
| 1112. | | |
| 1113. | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording Fees: Deed $ ; Mortgage $ ; Releases $ | | |
| 1202. City/County Tax/Stamps: Deed ; Mortgage | | |
| 1203. State Tax/Stamps: Deed ; Mortgage | | |
| 1204. Recording Service Fees to Pioneer Title, LLC | 110.00 | |
| 1205. Municipal Premium Tax to City of Lexington | 40.25 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. Credit Payoff to Whitaker Bank | 11,560.00 | |
| 1304. | | |
| 1305. | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | 16,281.33 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

Pioneer Title, LLC
Settlement Agent

BLJ.
WC.

(3700344 / 3700344 / 16)

**FINAL DOCUMENTATION TRANSMITTAL**

Investor: CITIMORTGAGE

Investor Loan #: [redacted]19128

Borrower's Name: BYRON JESSUP
Borrower's SSN: [redacted]

Homeland Capital Mortgage Loan #: [redacted]

**Enclosed:**

✓ **Original Recorded Mortgage / Deed of Trust**

___ **Final Title Policy**

Completed By: Shipping Department

Phone: (317) 575-8109

EXHIBIT E